No. 14232

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

_____

THE STATE OF MONTANA,

     Plaintiff and Respondent,

-vs-

JUAN MANUEL GONZALES LARA,

     Defendant and Appellant.

_____

Appeal from:  District Court of the Thirteenth Judicial District,
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

    For Appellant:

        Poppler and Barz, Billings, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Harold F. Hanser, County Attorney, Billings, Montana

_____

Submitted on briefs: September 20, 1978

Decided NOV 2 2 1978

Filed:

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Don's Food Center in Laurel, Montana, was robbed at 1:19 p.m. on August 20, 1977. Mrs. Nelson, wife of the owner, was working alone in the store at the time of the robbery. She testified she did not see the robber as he entered the store because she was busy with a customer. The robber after a few minutes moved behind a cigarette rack where he was partially hidden from Mrs. Nelson's view. During this time Mrs. Nelson was working at the cash register with her head down.

The robber then walked over and stopped in front of Mrs. Nelson approximately three feet away. As Mrs. Nelson looked up, the robber pulled a Halloween-type mask down over his face hiding his facial features completely. Mrs. Nelson testified she saw his face clearly for about "a second". At the trial, Mrs. Nelson described the robber as wearing a blue shirt and pants with a stocky build and of apparent Mexican descent. The robber brandished a pocketknife with an open blade and indicated he wanted the money from the cash register. Mrs. Nelson gave him the money, including two registered one dollar bills in a special money clip which, when the bills were removed, triggered an alarm at the Laurel police station. The robber then exited the store.

Mrs. Nelson ran into the living room of their house adjoining the store. There she was able to see the robber as he ran to and got into a turquoise colored automobile. Mrs. Nelson did not see his face again, however, she did see the driver of the car. Mrs. Nelson watched the car for several blocks until it drove out of sight.

Testimony was given at trial indicating the automobile Mrs. Nelson saw was stopped and its occupants apprehended

-2-

within fifteen or twenty minutes of the robbery. The appellant was one of the two occupants of the automobile. He was placed under arrest and read his constitutional rights in English and Spanish by an officer of the Montana Highway Patrol. The appellant was handcuffed and was sitting in the Highway patrolman's patrol car on the front passenger's side. Appellant asked the patrolman what was going on and then stated he was a hitchhiker whom the driver of the automobile had picked up shortly before being stopped. Appellant stated he had no knowledge of a robbery.

Mrs. Nelson then arrived at the scene of the arrest. She was accompanied by an officer of the Laurel police department to the highway patrol car in which appellant was sitting along with the highway patrolman. Mrs. Nelson then identified appellant as the individual who had committed the robbery. The Highway Patrolman testified at trial that the Laurel police officer asked Mrs. Nelson "[I]s this one of the fellows that was involved," to which she replied, "[Y]es, that fellow over on the passenger side is the fellow that was in the store." Mrs. Nelson then identified the driver of the stopped auto as the driver of the getaway car. She also identified the stopped automobile as the getaway automobile.

Appellant was charged with robbery in the District Court, Thirteenth Judicial District, Yellowstone County. Appellant plead not guilty and received a jury trial. The jury returned a verdict of guilty and the court entered judgment accordingly.

Appellant presents two issues for this Court to consider:

(1) Did the one-on-one showup conducted immediately after the arrest of appellant but prior to any initiation

of prosecutorial proceedings, and conducted without counsel for appellant, violate appellant's Sixth and Fourteenth Amendment right to counsel?

(2) Was the identification made by Mrs. Nelson so impermissibly suggestive as to violate due process thus making any in-court identification inadmissible?

Appellant first claims his constitutional rights were violated when he was subjected to a lineup without the presence of counsel. The United States Supreme Court has held such is not the case.

In Kirby v. Illinois (1972), 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411, defendant was arrested for burglary and taken to the police station. While there, the victim identified the defendant and another individual seated at a table as the men who had robbed him earlier. No attorney was present at that time and no formal charges had as yet been filed. 406 U.S. at 684, 685, 32 L.Ed.2d 415. The Supreme Court affirmed the judgment of conviction stating "it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." 406 U.S. at 688, 32 L.Ed.2d at 417; Moore v. Illinois (1977), _____ U.S. ____, 98 S.Ct. 458, 464, 54 L.Ed.2d 424.

The Court noted it was the initiation of judicial criminal proceedings "that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." 406 U.S. at 690, 32 L.Ed.2d at 418. It then declined to import into a routine police investigation an absolute constitutional guaranty applicable only after the onset of formal prosecutorial proceedings. Kirby, supra. We agree, and in this appeal find the right to counsel

-4-

had not yet attached at the time the appellant was subjected to the identification procedures. See, State v. Miner (1976), 169 Mont. 260, 546 P.2d 252.

This is not to say however, that a suspect in appellant's position is without constitutional safeguards. Kirby makes clear that the "Due Process Clause of the Sixth and Fourteenth Amendments forbids a lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification." Kirby, 406 U.S. at 691, 32 L.Ed.2d at 418. Thus, in case such as this, where no right to counsel attached to the identification procedure because it occurred before the commencement of judicial criminal proceedings, "due process protects the accused against the introduction of evidence of, or tainted by, unreliable pretrial identifications obtained through unnecessarily suggestive procedures." Moore, supra; Neil v. Biggers (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; Stovall v. Denno (1967), 388 U.S. 293, 87 S.Ct. 1967, 18 L. Ed.2d 1199.

This brings us to appellant's second issue. If we determine the identification procedure to be so unnecessarily suggestive as to violate due process, then the later in-court identification based on this prior identification must be deemed inadmissible as it was tainted by the primary illegality. Moore, 98 S.Ct. at 463; Gilbert v. California (1967), 388 U.S. 263, 272-273, 87 S.Ct. 1951, 18 L.Ed.2d 1178; Wong Sun v. United States (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

The test we must use in making this determination is two-pronged. First, was the identification procedure impermissibly suggestive; and, second, if so, did it under the totality of the circumstances have such a tendency to give rise to a sub-stantial likelihood of irreparable misidentification that to

-5-

allow the witness to make an in-court identification would violate due process. United States ex rel. John v. Casscles (2d Cir. 1973), 489 F.2d 20, 23, 24; Neil v. Biggers, 409 U.S. at 198, 34 L.Ed.2d at 410, 411.

It cannot be denied the identification procedure used in this appeal was suggestive, and was, in all likelihood, unnecessarily so. The appellant was sitting handcuffed, in a patrol car, next to a uniformed patrolman, at a place where there were two other police vehicles, other officers, the getaway vehicle and the driver of that vehicle. Such one-on-one confrontations have been pointed out as suggestive and widely condemned by the United States Supreme Court. Stovall v. Denno, 388 U.S. at 302, 18 L.Ed.2d at 1206; Foster v. California (1969), 394 U.S. 440, 443, 89 S.Ct. 1127, 22 L.Ed.2d 402, 407. Further there were no exigent circumstances here to warrant the one-on-one showup as existed in Stovall; the police in this case had the suspect in custody and could very easily have conducted a much less suggestive identification procedure. United States ex rel. Kirby v. Sturges (7th Cir. 1975), 510 F.2d 397, 403-404; State v. Pendergrass (1978), _____ Mont. _____, _____ P.2d _____, 35 St.Rep. _____ (No. 14209, decided Oct. 30, 1978). Thus, we conclude the procedure used here was unnecessarily suggestive. However, the fact the showup was unnecessarily suggestive does not in and of itself result in a deprivation of due process. Neil v. Biggers, supra; United States ex rel. Kirby v. Sturges, 510 F.2d at 404. Under the second prong of the test we employ, we must consider whether the totality of the circumstances gives rise to the substantial likelihood of misidentification and so be violation of due process. In this regard "reliability is the linchpin in determining the admissibility of identification testimony." Manson v. Brathwaite (1977), 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140, 154.

The Court in Manson mandates weighing the corruptive

effect of the suggestive procedure against factors to be

considered in evaluating the likelihood of misidentification.

Those factors were set out in Neil v. Biggers and include

> ". . . the opportunity of the witness to
> view the criminal at the time of the crime,
> the witness' degree of attention, the
> accuracy of the witness' prior description
> of the criminal, the level of certainty
> demonstrated by the witness at the con-
> frontation, and the length of time
> between the crime and the confrontation."
> Neil v. Biggers, 409 U.S. at 199, 34 L.
> Ed.2d at 411; Manson, supra.

Applying these factors to the facts of this appeal in our

consideration of the totality of the circumstances, we cannot

conclude the identification of appellant by Mrs. Nelson at

the scene of the arrest was so unreliable as to constitute

a violation of due process.

During the commission of the crime, Mrs. Nelson testified

the robber was approximately three feet away across the counter.

Mrs. Nelson and the robber confronted each other for several

minutes while the crime was being committed. The robbery

took place in the early afternoon in a lighted store. Although

Mrs. Nelson only observed the robber's face for a brief

moment before it was hidden by the mask, she had ample

opportunity to observe the robber's other physical character-

istics and dress at the time of the robbery and as he ran to the

getaway car. Mrs. Nelson's attention was not diverted in any

manner during the robbery. In fact, Mrs. Nelson attempted to

converse with the robber to ascertain exactly what he wanted.

When Mrs. Nelson was asked if the appellant sitting in the

patrol car was one of the individuals involved it was testified

she replied "Yes, that fellow over on the passenger side is

the fellow that was in the store." She exhibited no uncertainty

as to his identity. This identification took place only

ten to twenty minutes after the robbery had occurred. Thus there was not the factor of a long period of time intervening between the criminal act and the identification to cloud Mrs. Nelson's impressions.

Admittedly Mrs. Nelson did not give a description of the robber prior to identifying him at the scene of the arrest. This, of course, was due in large part to the rapidity with which the police apprehended the suspected perpetrators. While it would have been better procedure and would have insured a less questionable identification, we do not find this omission makes the identification unreliable. Mrs. Nelson also admittedly only briefly saw the robber's face before he covered it with his mask. However, she did observe his general build, hair and dress. One federal circuit court has noted that the lack of a particular description of a suspect is not fatal to the identification when the witness has positively made the identification. The Second Circuit Court of Appeals has taken judicial notice that there is a "recognition" capability which may be different in degree and separate in kind from the "recall" capability. Casscles, 489 F.2d at 24. "This is somewhat analogous to the phenomenon . . . of not being able to recall a particular word to describe something, but of having no difficulty in recognizing and knowing the word upon seeing it." Casscles, supra. Therefore the lack of any particular description of the robber's face in the facts of this appeal is overcome by the observation Mrs. Nelson made at the time of the crime and the certainty with which she made the identification.

Considering the totality of the circumstances presented by the facts of record in this case, we conclude that while the identification procedure was unnecessarily suggestive, it did not create a situation in which there was a substantial

-8-

likelihood of misidentification and therefore was not violative of due process.

Judgment affirmed.

_____
                    Justice

We Concur:

_____
         Chief Justice

_____

_____
            Justices