No. 85-432

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

STEVEN WADE ELLIOTT,

        Defendant and Appellant.

_____

APPEAL FROM: District Court of the Sixth Judicial District,
In and for the County of Sweet Grass,
The Honorable Byron Robb, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Knuchel & McGregor; Daniel B. McGregor, Livingston,
Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
James M. Scheier, Asst. Atty. General, Helena
G. Thomas Biglen, County Attorney, Big Timber,
Montana

_____

Submitted on Briefs: Jan. 30, 1986

Decided: April 24, 1986

Filed: APR 24 1986

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant Mr. Elliott appeals his conviction of deliberate homicide in the District Court for Sweet Grass County, Montana. He was sentenced to a term of 100 years. We affirm.

The issues are:

1. Was Mr. Elliott's right of due process violated at his sentencing hearing because matters not included in the presentence investigation report were considered?

2. Was Instruction No. 11 properly given?

3. Was Mr. Elliott denied effective assistance of counsel because his attorney 1) failed to investigate and call witnesses, and 2) secured a waiver of speedy trial without informing Mr. Elliott of the consequences of the waiver?

In July 1976, the body of 86-year-old William Feldt was found sitting in a chair in his home in Big Timber, Montana. There were no signs of struggle in the house, and no visible injuries on the body. The coroner estimated that Mr. Feldt had been dead for about two days, and determined that he had died of natural causes. Because of the amount of time since death, the body was not embalmed, but was instead buried in a special air-space and water-tight container inside a casket.

In May 1983, defendant, then 22 years old and incarcerated in the Lewis and Clark County Jail, contacted law enforcement authorities and gave a confession in which he said he had killed Mr. Feldt. He said he had been a paperboy in Big Timber, and that Mr. Feldt, a neighbor, had been one of his customers. He went into Mr. Feldt's house to collect for the paper and when Mr. Feldt paid him, he noticed a large amount of money in Mr. Feldt's wallet. Defendant turned as if to leave, but remained in the house and hid in the kitchen

for about 15 minutes. When he saw that Mr. Feldt had his back turned, defendant walked up behind him and stabbed him in the back with a knife. The old man fell into a chair, the knife still in his back. Defendant sat down in a chair across the room "to wait till he was dead," then walked over to the victim with another knife and cut his throat. Noticing that Mr. Feldt's eyes were still open, defendant poured a bottle of rubbing alcohol over his head to see if his eyes would blink. He then took Mr. Feldt's wallet, which had about $240 in it, withdrew the knife from the victim's back, and left. He later buried the wallet and threw the knives in the dump. Defendant Mr. Elliott repeated his confession in writing and for the Department of Justice, with minor variations on where he disposed of the wallet and the knives.

Mr. Feldt's body was exhumed for examination. At trial, a pathologist testified that he had found evidence of the wounds Mr. Elliott had described, and that Mr. Feldt had died from internal loss of blood caused by the stab wound to his back. Other details of Mr. Elliott's confessions were also corroborated.

At trial, Mr. Elliott recanted his confessions. He testified that he had seen a 12-year old acquaintance walk out of Mr. Feldt's house holding a wallet and some money. Mr. Elliott testified that the acquaintance told him to keep quiet, and gave him half the money. At the time of trial, this acquaintance was deceased. Mr. Elliott testified that he had given the confessions falsely, and that at the time he gave them he was so depressed that he wanted to die.

I

Was Mr. Elliott's right of due process violated at his sentencing hearing because matters not included in the pre-sentence investigation report were considered?

3

The presence investigation report submitted to the District Court showed that Mr. Elliott had parole revoked in April 1983 for "parole violation - concealed weapon." At the sentencing hearing, the District Court, over Mr. Elliott's objection, received into evidence a written report and additional testimony by defendant's former parole officer about the reasons that parole was revoked. Mr. Elliott contends that this constituted consideration of other violations or criminal activity and was error under State v. Stewart (1977), 175 Mont. 286, 573 P.2d 1138.

In Stewart, the district judge personally interviewed several witnesses after trial. No record was made of the interviews and no notice was given that the interviews would be conducted. This Court held that the judge had improperly acted as a fact-gatherer and had infringed upon the defendant's due process right to confront his accusers. Stewart, 573 P.2d at 1148.

Mr. Elliott's effort to apply the holding in Stewart to the facts of this case fails. The additional information in this case was not obtained from the sentencing judge's independent investigation, but from the person who prepared the presence investigation report. There is no due process right for a defendant to have advance notice of all facts that make up a sentencing recommendation. State v. Pearson (Mont. 1985), 704 P.2d 1056, 1060, 42 St.Rep. 1253, 1257. Mr. Elliott was represented by counsel at the sentencing hearing, had the opportunity to cross-examine the witness regarding the new material, had the opportunity to rebut the new material, and could have called for a continuance in order to call his own rebuttal witnesses. This situation, unlike the one in Stewart, does not present a due process violation.

## II

Was Instruction No. 11 properly given?

The court instructed the jury that:

> Neither the prosecution nor the defense is required to call as witness all persons who are shown to have been present at any of the events involved in the evidence, or who may appear to have some knowledge of the matters in question in this trial; nor is the prosecution or defense required to produce as exhibits all objects or documents that have been referred to in the testimony, or the existence of which may have been suggested by the evidence.
>
> The jury will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence and no adverse inferences may be drawn from his failure to do so.

Mr. Elliott objects to this instruction, arguing that it appears to lessen the burden of proof required of the State.

The State argues that the effect of this instruction is to aid the jury in evaluating the evidence on the basis of what is before them, not on the basis of what has not been brought before them. California has approved the use of this type of instruction for a number of years. See People v. Reingold (Calif. 1948), 197 P.2d 175, 191. The jury was also instructed separately on the burden of proof in a criminal case. We conclude that giving instruction No. 11 did not in any way affect the State's burden of proof. We hold that giving instruction No. 11 was not error.

## III

Was Mr. Elliott denied effective assistance of counsel because his attorney 1) failed to investigate and call witnesses, and 2) secured a waiver of speedy trial without informing Mr. Elliott of the consequences of the waiver?

We have recently adopted a two-fold test for determining whether effective assistance of counsel was denied. State v.

5

Robbins (Mont. 1985), 708 P.2d 227, 232, 42 St.Rep. 1440, 1444, citing Strickland v. Washington (1984), 104 S.Ct. 2052, 2064. First, the defendant must show that counsel's performance was deficient. This Court has used the "reasonably effective assistance" test of whether a defendant's counsel acted within the range of competence demanded of attorneys in criminal cases. State v. Rose (1980), 187 Mont. 74, 86, 608 P.2d 1074, 1081. Second, the defendant must show that the deficient performance prejudiced him so seriously as to deprive him of a fair trial.

Defendant argues that he was denied effective assistance of counsel because his attorney failed to call as witnesses certain persons listed in the pretrial order. He alleges in his brief that his attorney failed to even contact these persons. Attached to his brief are his affidavit to that effect and another affidavit that defendant was on drugs when he made his confessions. We do not consider the affidavits because they are outside the record. State v. Dess (Mont. 1984), 674 P.2d 501, 502, 41 St.Rep. 31, 33. The decision to call or not call witnesses is a matter of trial tactics, which are normally not grounds for a determination that counsel's performance was deficient. State v. Lopez (1980), 185 Mont. 187, 191, 605 P.2d 178, 180-1. The record fails to substantiate defendant's allegations that the witnesses not called could have presented evidence which would weaken his confessions and the corroborating evidence against him.

Mr. Elliott's argument that he was uninformed of the consequences of his waiver of speedy trial is contradicted by the record. The record shows that the District Court judge explained to Mr. Elliott his right of speedy trial at the time the waiver was made, and that Mr. Elliott agreed to waive the right. Mr. Elliott later wrote to his attorney,

6

asking that the waiver be rescinded. No such action was taken, but at the next hearing on motions in this matter, the District Court asked Mr. Elliott if he was satisfied with his counsel's performance, and he said that he was. We conclude that there is no evidence that counsel's performance was deficient in securing the waiver of speedy trial.

Affirmed.

_____
Justice

We concur:

_____

_____

_____

_____