No. 89-386

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

      Plaintiff and Respondent,

-vs-

NORMAN E. SCHOFFNER,

      Defendant and Appellant.

MAY 16 1991

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

            Allen Beck, Billings, Montana
            Norman E. Schoffner, Pro Se, Deer Lodge, Montana

      For Respondent:

            Hon. Marc Racicot, Attorney General, James
            Yellowtail, Assistant Attorney General, State of
            Montana, Helena, Montana

            Dennis Paxinos, Yellowstone County Attorney, Brent
            Brooks, Deputy County Attorney, Billings, Montana


Submitted on Briefs:  March 21, 1991

Decided:  May 16, 1991

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The defendant, Norman E. Schoffner, appeals his conviction of burglary following a jury trial in the District Court of the Thirteenth Judicial District, Yellowstone County. We affirm.

As a preliminary matter, we note that after the notice of appeal was filed in this case, the defendant's court appointed appellate counsel filed a motion to withdraw as counsel on the basis of lack of meritorious appealable issues. Counsel's motion was accompanied by an "Anders" brief which referred to possible arguments in support of the appeal, as required by Anders v. California (1967), 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493. This Court's examination of the record, required by Anders, resulted in its conclusion that counsel's evaluation of the case was sound; therefore, we granted counsel leave to withdraw and allowed the defendant to proceed with the appeal pro se. The defendant filed his pro se brief with this Court on January 22, 1991, to which the State subsequently responded. We now consider the issues raised by the defendant.

1. Was the defendant's arrest supported by probable cause?

2. Did the show-up identification conducted immediately after the defendant's arrest, but prior to the initiation of adversarial judicial proceedings, violate defendant's Sixth and Fourteenth Amendment right to counsel?

3. Was the show-up identification impermissibly suggestive so as to violate the defendant's due process rights?

4. Was the defendant denied effective assistance of counsel?

2

Our review of the record reveals that the defendant's first three issues were not raised during any stage of the proceedings in the trial court. It is the law of this State that, absent statutorily prescribed circumstances not material to the case now before us, a defendant cannot appeal issues which were not raised with the trial court. Section 46-20-104(2), MCA; § 46-20-701, MCA. However, in light of the procedure required by the United States Supreme Court in Anders, we will address these issues on the merits.

The factual background of this appeal is as follows: At approximately 5:00 a.m. on October 3, 1988, Greg Straw, Susan Ware, and Audrey Marlenee were in Straw's second floor apartment located in Billings, Montana. All three heard the sound of breaking glass and went to the apartment's front windows to determine the cause. All three saw a black man they later described as wearing a white coat and red-colored pants, crawl through a broken window in to the laundromat directly across the street. Greg Straw immediately called the police to report the incident. The eyewitnesses observed the man rummage through the drawers and cabinets inside the laundromat for a few minutes, crawl back outside the broken window and walk away. During this time Mr. Straw was on the telephone with the police dispatcher and relayed the foregoing information, giving a "blow by blow" account of the burglary as it occurred.

Police Officer Allan Bentz was given a description of the suspect and dispatched to the scene. Officer Bentz observed the

defendant, who was dressed similarly to the description of the suspect, approximately one block from the scene of the burglary. Officer Bentz stopped the defendant, and advised him of the reason for the stop. As a precaution, the officer patted him down for weapons and discovered that the defendant had a large quantity of change in his pants pocket. The defendant was then arrested and read his Miranda rights. At the request of an officer at the scene of the crime, Officer Bentz then transported the defendant to the laundromat in his patrol car. At the laundromat, the defendant was made to stand beside the patrol car. The eyewitnesses positively identified the defendant as the person they observed inside the laundromat. The defendant was then taken to City Hall for booking. At City Hall, a large quantity of change, three $20 bills and one $5 bill were taken from the defendant's pockets. One of the $20 bills was a 1934 issue with distinctive coloring.

Officer Craig Wrzesinski interviewed the owner of the laundromat, Wilma Imel, as to the property taken and had her fill out a stolen property report form. She had discovered that at least $5 in change had been taken along with $60 to $80 in $20 bills. She described one $20 bill as being a 1934 issue which was unusually dark in color.

On October 5, 1988, the defendant was charged by information with the offense of burglary. On October 6, 1988, the State notified the defendant that it intended to seek designation of the defendant as a persistent felony offender on the basis of two previous felony convictions.

4

Trial began on January 9, 1989. At trial, both Mr. Straw and Ms. Ware described their identification of the defendant at the scene of the crime following his arrest. In addition, both identified the defendant again in the courtroom as the person they had observed committing the burglary. The third eyewitness, Ms. Marlenee, did not testify. On January 10, 1989, the jury found the defendant guilty of burglary. The District Court subsequently sentenced the defendant to fifteen years on the burglary conviction and to another ten years as a persistent felony offender, with the sentences to be served consecutively.

I.

The defendant contends that he was illegally arrested because his arrest was not supported by probable cause. We disagree.

The probable cause requirement is satisfied at the time of the arrest if the facts and circumstances within the officer's personal knowledge, or imparted to the officer by a reliable source, are sufficient to warrant a reasonable person to believe that the suspect has committed an offense. State v. Lee (1988), 232 Mont. 105, 109, 754 P.2d 512, 515; State v. Ellinger (1986), 223 Mont. 349, 352, 725 P.2d 1201, 1202. In this case, one of the eyewitnesses, Mr. Straw, gave the police dispatcher an ongoing account of the crime as it occurred, including a description of the perpetrator. The dispatcher relayed this information in a broadcast to patrol officers. Officer Bentz testified that he observed the defendant within one block of the laundromat. The defendant was dressed similarly to the broadcast description of the

suspect and was the only person in the area. After stopping the defendant, Officer Bentz patted him down for weapons and discovered that the defendant had a large quantity of coins in his pants pocket. Given these facts and circumstances, there is no question that probable cause existed to believe the defendant had committed the offense of burglary. Thus, we find no merit in the defendant's contention.

## II.

The defendant claims that his constitutional rights were violated when he was subjected to the post-arrest show-up without the presence of counsel. The United States Supreme Court has stated that a person's Sixth and Fourteenth Amendment right to counsel attaches only "at or after the initiation of adversary judicial criminal proceedings--whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Kirby v. Illinois (1972), 406 U.S. 682, 689, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411, 417; see also State v. Lara (1978), 179 Mont. 201, 587 P.2d 930. In addition, the United States Supreme Court noted in Kirby that although Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, extended the right to counsel, it did so only in the limited context of custodial interrogations and has no applicability to identification procedures conducted before the initiation of adversarial judicial proceedings. Kirby, 406 U.S. at 687, 92 S.Ct. at 1881, 32 L.Ed.2d at 416. Because no adversarial judicial proceedings had been initiated against the

defendant at the time he was subjected to the identification procedure, his right to counsel had not yet attached.

## III.

The defendant next contends that the show-up identification procedure violated his due process rights. He argues that the suggestive nature of the procedure tainted the in-court identifications made by Mr. Straw and Ms. Ware. In determining whether an in-court identification based on a pretrial identification is admissible, the test we must use is two-pronged. First, we must determine whether the pretrial identification procedure was impermissibly suggestive; and second, if impermissibly suggestive, did the procedure have such a tendency to give rise to a substantial likelihood of irreparable misidentification that to allow the witness to make an in-court identification would violate due process, under the totality of the circumstances. Neil v. Biggers (1972), 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401, 410-11; Lara, 587 P.2d at 932.

The procedure used to identify the defendant was undoubtedly suggestive. The defendant was brought to the scene of the crime and made to stand alone near uniformed police officers and a patrol car. This Court recognized the suggestive nature of this type of identification procedure in State v. Rudolph (1989), 238 Mont. 135, 141, 777 P.2d 296, 300, stating that:

> Indeed, a "show up" identification requiring a "yes or no" answer is a far less desirable situation than positively picking out a person from an anonymous lineup. Biggers, supra; State v. Lara, supra; State v. Campbell

7

(1985), 219 Mont. 194, 711 P.2d 1357, <u>cert. denied</u>, 475 U.S. 1127, 106 S.Ct. 1654, 90 L.Ed.2d 197. As we cautioned in <u>Campbell</u>, "[l]aw enforcement agencies [are] ill advised to rely solely on one-to-one showups in identifying suspects with a crime." <u>Campbell</u>, 711 P.2d at 1362.

Under the second prong of the test, we must determine whether, under the totality of the circumstances, the identification procedure gave rise to a substantial likelihood of irreparable misidentification. <u>Biggers</u> sets forth five factors to be considered in evaluating the likelihood of misidentification. These factors are:

> [T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

<u>Biggers</u>, 409 U.S. at 199-200, 93 S.Ct. at 382, 34 L.Ed.2d at 411.

Both Mr. Straw and Ms. Ware had ample opportunity to view the defendant during the burglary. Both testified that they observed the defendant in the laundromat for several minutes and that the inside of the laundromat was well lit. Mr. Straw and Ms. Ware were more than casual or passing observers of the burglary. At the sound of breaking glass, both went to the apartment window overlooking the laundromat and watched with concern the commission of the burglary. Mr. Straw gave a "blow by blow" account of the burglary as it occurred. The descriptions given to the police by both witnesses were accurate regarding the perpetrator's race, gender, size, and the color of his jacket. Both testified that during the pretrial identification the light outside the laundromat

8

was sufficient to permit a clear observation of the defendant and both were quite certain that the defendant was the person who was inside the laundromat. The record also reveals that less than ten minutes passed between the crime and the confrontation and that the defendant was stopped approximately one block from the laundromat.

The defendant points to discrepancies between the descriptions given and his actual attire and argues that the witnesses were at least in error, if not perjurious. He argues that the color of his pants was closer to purple than to red, as described by the witnesses, and that he was wearing a baseball cap which neither witness described initially. Such variations in detail affect the weight rather than the admissibility of the pretrial identification. State v. Rudolph (1989), 238 Mont. 135, 142, 777 P.2d 296, 300.

Considering the totality of the circumstances, we hold that, although suggestive, the identification procedure did not create a substantial likelihood of misidentification.


IV.

The defendant maintains that he received ineffective assistance of counsel in that trial counsel (1) failed to meet with him often enough to prepare an adequate defense; (2) stated that the defendant had no chance of acquittal and suggested a plea bargain; (3) failed to contact and interview potential witnesses whose testimony was essential to giving credibility to the defendant's assertion of innocence; (4) failed to object to the

prosecution's motion to reschedule the trial date; (5) failed to object to the testimony of Wilma Imel whom the defendant contends was never endorsed as a witness prior to trial; (6) failed to ensure that Audrey Marlenee, an eyewitness, testified at trial; and (7) failed to challenge the discrepancies between statements made by witnesses Straw, Ware, and Imel to police on the date of the offense and their testimony at trial.

In State v. Coates (1990), 241 Mont. 331, 337, 786 P.2d 1182, 1185, this Court made the following observation regarding claims of ineffective assistance of counsel:

> In evaluating ineffective assistance of counsel claims, this Court utilizes a two-part test set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. First, counsel's performance must be deficient. To assess deficient performance, this Court employs the "'reasonably effective assistance' test of whether a defendant's counsel acted within the range of competence demanded of attorneys in criminal cases. (Citation omitted.)" State v. Elliott (1986), 221 Mont. 174, 178, 717 P.2d 572, 575. Second, counsel's deficient performance must have so prejudiced the defendant as to deprive the defendant of a fair trial. State v. Leavens (1986), 222 Mont. 473, 475, 723 P.2d 236, 237. The standard for evaluating prejudice is whether a reasonable probability exists that but for counsel's deficient performance, the trial's outcome would have been different. Leavens, 723 P.2d at 237. However, in evaluating a defense counsel's performance, this Court will not second guess trial tactics and strategy. State v. LaValley (1983), 203 Mont. 393, 397, 661 P.2d 869, 872.

Our review of the defendant's allegations in the context of a direct appeal must be confined to the record. Section 46-20-701, MCA; State v. Black (Mont. 1990), 798 P.2d 530, 532, 47 St.Rep. 1677, 1679. The defendant's first three claims require consideration of factual matters outside the record; thus, they are

10

inappropriate in the context of a direct appeal. <u>Black</u>, 798 P.2d at 533.

The defendant's fourth claim alleges that counsel failed to object to the prosecution's motion to reschedule the trial date. The record shows that the District Court continued the December 12, 1988 trial date due to the absence of a State witness. The granting of the continuance was within the discretion of the District Court and the defendant has failed to show how he was prejudiced by the delay.

The fifth claim alleges counsel should have objected to the testimony of Wilma Imel because she was not endorsed as a witness prior to trial. This allegation is factually unfounded. A review of the record indicates Imel was endorsed as a State witness by stipulation on December 28, 1988.

The defendant next alleges counsel failed to ensure that Audrey Marlenee, an eyewitness, testified at trial. Although she did not testify at trial she did give a statement to police on the date of the offense, identifying the defendant as the perpetrator of the burglary. Her testimony could reasonably have been expected to be merely cumulative to that of the other eyewitnesses. The defendant has failed to show how the absence of this witness prejudiced his defense or affected the outcome of the trial.

The defendant's last claim alleges that counsel failed to challenge the discrepancies between statements given to police by witnesses Straw, Ware and Imel, and their testimony at trial. A review of the transcript reveals that counsel did not cross-

examine Mrs. Imel. The statements given to police by Mr. Straw and Ms. Ware did not mention that the defendant was removed from the patrol car at the scene by the arresting officers and neither described the perpetrator of the crime as wearing a cap, although the defendant was wearing one when arrested. Contrary to the defendant's contention, however, counsel made a concerted effort to illustrate the discrepancies when cross-examining Mr. Straw and Ms. Ware. The defendant has failed to show counsel's performance was deficient in this regard.

Affirmed.

_____
Justice

We concur:

_____

_____

_____
Justices

Justice Terry N. Trieweiler concurring in part and dissenting in part.

I concur with the majority's disposition of the first three issues raised by the defendant.

I dissent from that part of the majority's decision which refuses to consider the first three bases upon which appellant contends that he received ineffective assistance of counsel. The majority's rationale for not considering these allegations is that to do so would require consideration of factual matters outside the record. That is correct. There cannot logically be any record of an attorney's failure to meet with his client and prepare an adequate defense; or of conversations between defendant and his counsel; or of counsel's failure to contact potential witnesses.

However, it is not a reasonable use of this Court's resources to refuse to consider those issues in this appeal and invite a petition for post-conviction relief to consider the same issues.

The majority cited State v. Black, 798 P.2d 530, 532, 47 St.Rep. 1677, 1679 (Mont. 1990), as authority for its refusal to consider matters which are not part of the record. However, the action taken in this case is not consistent with what this Court did in State v. Black. In that case, even though defendant raised ineffective assistance of counsel on direct appeal, that appeal was treated as a petition for post-conviction relief for purposes of dealing with that issue, and remanded to the District Court for an evidentiary hearing to allow the defendant to develop the necessary

13

record with which to argue inadequacy of counsel. That defendant's appeal from the adverse finding of the trial court was then consolidated with the remaining issues on appeal. The following quote from State v. Black is illustrative of what was done in that case:

> In this case, although defendant originally raised the issue of ineffective assistance of counsel on direct appeal, the resolution of such issue required consideration of factual matters not contained in the record thereby making it an inappropriate issue for direct appeal. Section 46-20-701, MCA; *State v. Elliott*, 221 Mont. 174, 178, 717 P.2d 572, 575 (1986). Because defendant's filing failed to meet the requirements of a direct appeal, we appropriately treated such filing as a petition for post-conviction relief, as provided in §§ 46-21-101 to 203, MCA. We then remanded defendant's claim to the District Court so that an evidentiary hearing could be held that would allow defendant to present those factual matters necessary to his claim. See *State v. Laverdure*, 212 Mont. 31, 33, 685 P.2d 375, 376 (1984).

State v. Black, 798 P.2d at 532.

I would follow the same procedure followed in the Black decision in order to avoid duplication of proceedings in this case.

_____
Justice

14