No. 96-140

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STATE OF MONTANA,

        Plaintiff and Appellant,

v.

ORVAL LEE HENDRICKSON,

        Defendant and Respondent.

FILED

JUN 10 1997

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and for the County of Gallatin,
                The Honorable Larry W. Moran, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Susan L. Wordal, City Prosecutor, Bozeman, Montana

        For Respondent:

                Allen Beck, Attorney at Law, Billings, Montana

Submitted on Briefs: May 8, 1997

Decided:  June 10, 1997

Filed:

_____
                  Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

The State of Montana (State) appeals from the Eighteenth Judicial District Court's order dismissing charges of Driving Under the Influence, a violation of § 61-8-401, MCA, against Orval Lee Hendrickson (Hendrickson). We reverse in part, affirm in part, and remand.

We address the following issue on appeal:

Did the District Court err in dismissing the charges because Officer John Woodland of the Belgrade Police Department did not have jurisdiction to arrest a suspect and continue investigation of the offense within the city limits of Bozeman?

## BACKGROUND

Officer John Woodland (Woodland), a member of the Belgrade Police Department, was in Bozeman delivering a prisoner to the Gallatin County Detention Center. While traveling through Bozeman, he observed a motorcycle approaching his police vehicle while he was stopped at a stop light. Woodland observed the rider, later identified as Hendrickson, having difficulty controlling his motorcycle. Woodland followed Hendrickson down Main Street to Fifth Street, where Hendrickson stopped at a green light.

Woodland contacted the Bozeman Police Department and informed the dispatcher that he was following a motorcycle with a driver who possibly was intoxicated. After witnessing Hendrickson's continued difficulty controlling his vehicle, Woodland advised the Bozeman Police Department dispatcher of the situation and asked the dispatcher for assistance.

2

Woodland was given authorization by Ed Benz of the Bozeman Police Department to effect a traffic stop on Hendrickson. Woodland stopped Hendrickson and momentarily waited for assistance.

While waiting for assistance, Woodland approached the driver and asked a series of routine questions, including a request for registration, license and proof of insurance. Woodland observed a number of factors indicative of intoxication including slurred speech, a strong odor of alcohol, and bloodshot eyes. Shortly after Woodland made these initial observations, a Bozeman Police Department patrol car arrived on the scene with uniformed officers Steve Keim (Keim) and David McManis (McManis). While Keim exited the vehicle McManis set up the video camera in the Bozeman Police Department patrol car.

While McManis and Keim watched, Woodland had Hendrickson perform a series of field sobriety tests. After the tests were completed, Keim had Hendrickson perform the Horizontal Gaze Nystagmus test. Hendrickson was not cooperative and Keim abandoned the test. At the conclusion of these tests, Woodland placed Hendrickson under arrest while Keim secured the motorcycle. Woodland transported Hendrickson to the Gallatin County Detention Center. At the Detention Center, Woodland read Hendrickson the Implied Consent Law and asked him if he would submit to a breath test and Hendrickson refused. Woodland asked again about an hour later at which time Hendrickson agreed to take the test. Although Keim and McManis were present, Sergeant Mel McCarver authorized Woodland to write the citation charging Hendrickson with Driving Under the Influence in violation of

3

§ 61-8-401, MCA. Hendrickson was tried and convicted in City Court of Driving Under the Influence of Alcohol in violation of § 61-8-401, MCA. He appealed the matter to District Court where he filed a Motion to Dismiss the Complaint or, in the alternative, Suppress Evidence obtained as a result of the arrest. The District Court dismissed the charges and the State appealed.

## DISCUSSION

The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

In Montana, police officers are given authority to arrest a person without an arrest warrant pursuant to § 46-6-311(1), MCA, which provides:

> (1) A peace officer may arrest a person when a warrant has not been issued if the officer has probable cause to believe that the person is committing an offense or that the person has committed an offense and existing circumstances require immediate arrest.

An individual citizen may affect an arrest under the following circumstances:

> (1) A private person may arrest another when there is probable cause to believe that the person is committing or has committed an offense and the existing circumstances require the person's immediate arrest.
> (2) A private person making an arrest shall immediately notify the nearest available law enforcement agency or peace officer and give custody of the person arrested to the officer or agency.

Section 46-6-502, MCA. In addition, this Court has held that peace officers do not lose their status as private citizens when they are outside of their jurisdiction. State v. McDole (1987),

4

226 Mont. 169, 172, 734 P.2d 683, 685. Section 46-6-502, MCA, authorizes arrest by private citizens when there is probable cause to believe that the person is committing an offense. We have held that a peace officer outside his or her jurisdiction can still perform an arrest as a private citizen. McDole, 734 P.2d at 685.

In the present case, the District Court concluded that Woodland was outside his jurisdiction as a peace officer and that he exceeded his authority as a private citizen. In granting Hendrickson's motion to dismiss, the District Court stated:

> It's clear to me that Officer Woodland was not given any authority to arrest. The granting of the authority to make a traffic stop does not make the authority to arrest, necessarily. And yet he proceeded in the presence of Bozeman police officers to do several things, which would be incident to an arrest: First, he arrested the defendant. He did not turn him over to the Bozeman police authorities. He thence proceeded to act as a police officer in the sense that he went through the various and sundry DUI field sobriety maneuvers. Then he took the defendant down to the detention center and then issued a ticket based on Belgrade city forms.

Although the District Court was correct in concluding that Woodland over-stepped his authority when he failed to give custody of Hendrickson to the Bozeman City Police once Keim and McManis arrived, Woodland's actions prior to their arrival were within his authority as a private citizen. Because § 46-6-502(2) required Woodland to relinquish custody to the Bozeman law enforcement authorities, his actions before the arrival of Keim and McManis and after their arrival will be analyzed separately.

### Woodland's authority as a private citizen

Under § 46-6-502(1), MCA, Woodland was within his authority as a private citizen to observe Hendrickson's erratic driving, to perform the traffic stop as requested, and to relate his observations of Hendrickson's slurred speech, odor of alcohol and bloodshot eyes. In McDole, a Eureka police department officer responded to a call based upon reports of possible DUI and leaving the scene of an accident by McDole in the city of Eureka. McDole, 734 P.2d at 684. After the officer arrived at McDole's residence, outside the city of Eureka, McDole walked out of his house and said, "Take me! Take me!" This statement combined with the Eureka police officer's own observations led him to believe that McDole may have been driving under the influence of alcohol. The Eureka police officer proceeded to arrest McDole, take him to the police department and give him a breath test. McDole, 734 P.2d at 684-85. In McDole, this Court held that a police officer outside his or her jurisdiction has not lost his or her status as a citizen. McDole, 734 P.2d at 685. This Court explained "if an arrest by a private citizen would be lawful under the existing circumstances, the arrest by an officer out of his jurisdiction would be lawful." McDole, 734 P.2d at 685. As in McDole, Woodland was clearly outside his jurisdiction when he stopped Hendrickson. When Woodland stopped Hendrickson and observed behavior indicative of intoxication, he was acting as a private citizen under the authority of § 46-6-502, MCA.

Woodland's actions following arrival of Officers Keim and McManis

Section 46-6-502(2), MCA, requires a private citizen to immediately notify local authorities and relinquish custody to the officer or agency with jurisdiction. In support of its

argument that Woodland acted within his authority in conducting field sobriety tests, effecting an arrest and requesting a breathalyser, the State relies on our decision in Maney v. State (1992), 255 Mont. 270, 842 P.2d 704, in which we affirmed an arrest where a Chinook City police officer, after observing Maney driving erratically in town, followed him out of town (outside the officer's jurisdiction) where he observed further erratic driving. He then stopped Maney and conducted field sobriety tests in the presence of a sheriff's deputy who had arrived on the scene. Maney, 842 P.2d at 705. The Chinook city police officer then transported Maney to the Blaine County Sheriff's Office in Chinook where he requested that Maney take a breathalyser. Maney refused. His license was suspended as a result. Maney, 842 P.2d at 705. On appeal, Maney relied on § 46-6-502(2), MCA, for his contention that the officer's arrest and request for breathalyser were illegal due to failure of the police officer to relinquish custody of Maney to the sheriff's deputy who had jurisdiction outside the city limits. Maney, 842 P.2d at 706. We determined that the officer making the arrest was still a peace officer for purposes of the implied consent statute even though he made the arrest as a private citizen. Maney, 842 P.2d at 707. We noted that the police officer immediately notified the Blaine County Sheriff's Office and promptly transported Maney to the sheriff's office for booking. "As soon as Officer Gomke entered the Chinook city limits he was within his jurisdiction and it would make no sense to require Officer Gomke to transfer his prisoner to another officer who also had jurisdiction." Maney, 842 P.2d at 706.

7

The Maney decision does not specifically address the question of whether Officer Gomke's authority as a private citizen ceased upon the arrival of the sheriff's deputy, although the decision, by necessary implication, certainly suggests that his authority did not cease. Rather, Officer Gomke was allowed to continue with the field sobriety tests in the presence of the sheriff's deputy, to then transport Maney to the City of Chinook where Gomke had jurisdiction, and then to request a breathalyser. Maney, 842 P.2d at 706. We now conclude that this Court's holding in Maney is too broad in the scope of authority that it grants to a citizen's arrest pursuant to § 46-6-502, MCA. Absent any exigent circumstances, when a citizen or out-of-jurisdiction peace officer, *acting as a citizen*, makes a stop or arrest, his or her authority to proceed ceases once a peace officer with jurisdiction arrives at the scene.

Woodland exceeded his authority as a citizen when, after the arrival of the Bozeman police officers, instead of relinquishing custody to the officers, he conducted field sobriety tests, detained and arrested Hendrickson and requested that he submit to a breathalyser. We conclude that any evidence obtained by Woodland (including the initial refusal and/or results of the breathalyser test) after the police officers arrived was obtained illegally and must be suppressed as requested by Hendrickson. To the extent that Maney suggests a contrary result, it is overruled.

The State contends that Woodland had authority to assist peace officers from other jurisdictions. Section 46-6-402, MCA, provides that a peace officer making an arrest may

8

command the aid of persons 18 years of age or older. In the present case, however, the Bozeman police officers did not command aid in "making a lawful arrest." Rather, it was Woodland acting as a citizen who was seeking assistance. In State v. Williams (1995), 273 Mont. 459, 904 P.2d 1019, this Court held that a peace officer from one jurisdiction could assist a peace officer in another if his assistance were requested. Williams, 904 P.2d at 1022-23. However, unlike the facts before this Court in Williams, there were no exigent circumstances requiring Woodland to engage in investigating and charging Hendrickson. See Williams, 904 P.2d at 1022. The Bozeman police officers arrived on the scene a relatively short time after Woodland had stopped Hendrickson and had already commenced the field sobriety testing and arrest process. These officers were fully capable of conducting the investigation and arrest on their own. This is not a situation where officers within their jurisdiction were pursuing a suspect or investigating a crime and, due to exigent circumstances, called upon Officer Woodland's assistance. Rather, this situation was initiated by Woodland as a result of Woodland's observations while outside his jurisdiction. Section 46-6-502(2), MCA, required Woodland to immediately notify the local authorities and relinquish custody of Hendrickson to Bozeman City Police. Indeed, beyond making the traffic stop, Woodland was not compelled to render assistance in this case. Once Keim and McManis of the Bozeman City Police Department arrived, they had the authority and duty to conduct any investigation and arrest.

We hold that Woodland acted outside the authority given to a private citizen under § 46-6-502, MCA, by failing to turn Hendrickson over to the Bozeman City Police once Officers Keim and McManis arrived on the scene. Woodland had no authority to conduct field sobriety tests, detain and arrest Hendrickson or request a breathalyser test once the Bozeman City Police were available to complete these tasks. Therefore, we affirm the District Court's conclusion that "[t]he field sobriety tests and so forth were illegal and unlawful." We hold that all evidence obtained by Woodland after Keim and McManis had arrived on the scene must be suppressed. However, the fact that Woodland's arrest of Hendrickson was illegal and that evidence obtained incident to that arrest is inadmissable, does not mean that the charges against Hendrickson must be dismissed.

An illegal arrest has no impact on a subsequent prosecution based upon evidence not tainted by the illegality. The State can pursue a prosecution despite the manner of the arrest so long as the evidence remaining is otherwise admissible. State v. Sor-Lokken (1991), 247 Mont. 343, 348, 805 P.2d 1367, 1370-71; State v. Woods (1983), 203 Mont. 401, 662 P.2d 579. Woods cited United States v. Crews (1980), 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537, in which the Court stated: "An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." Crews, 445 U.S. at 474. The illegality of the detention does not deprive the government of the opportunity to prove guilt through the introduction of evidence wholly untainted by police misconduct. Crews, 445 U.S. at 475. The fact that Woodland exceeded his authority by not relinquishing

10

custody to the Bozeman City Police does not mean that his observations prior to that time cannot form the basis for a charge against Hendrickson. Woodland's Affidavit of Probable Cause sets forth in great detail his observations of Hendrickson's difficulties while trying to maneuver his motorcycle in traffic, his slurred speech, red and watery eyes and the smell of alcohol on his breath. Even when the statement in the Affidavit that Hendrickson failed 5 of 5 field sobriety tests is excised, the balance of the Affidavit is sufficient to establish probable cause to charge Hendrickson with DUI.

Accordingly, we affirm the District Court's conclusion that the tests conducted by Woodland were illegal and the results of those tests cannot be used against Hendrickson. However, we reverse the District Court's dismissal of charges against Hendrickson and remand this matter to the District Court for trial on the merits.

_W. William Leaphart_
Justice

We concur:

_J. A. Turnage_
Chief Justice

_Jim Regnier_

_Terry Trieweiler_

_Karla M. Gray_
Justices

11