No. 97-135

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 199

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RUSSELL LEE WILLIAMSON,

Defendant and Appellant.

APPEAL FROM: District Court of the Seventeenth Judicial District,

In and for the County of Blaine,

The Honorable John C. McKeon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Daniel A. Boucher (argued); Altman & Boucher, Havre, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General

Tammy Plubell (argued), Ass't Attorney General, Helena, Montana

Stuart C. MacKenzie, Chinook City Attorney, Chinook, Montana

Argued and Submitted: February 12, 1998

Decided: August 13, 1998

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶ **Russell Lee Williamson (Williamson) appeals from the judgment entered by the Seventeenth Judicial District Court, Blaine County, on its order denying his motion to suppress evidence. We reverse.**

¶ **The issue on appeal is whether the District Court erred in concluding that Officer Mark Weber had probable cause to stop Williamson and in denying Williamson's motion to suppress on that basis.**

## BACKGROUND

¶ **On June 20, 1995, the Blaine County Sheriff's Office dispatcher received a telephone call from Sue Reid (Reid) reporting a drunk driver in the vicinity of the C-**

Store convenience store (C-Store) in Chinook, Montana. The dispatch record indicates that Reid reported a "very drunk" older male, driving an old blue Chevy pickup truck which, at the time, was parked behind the C-Store, and gave the license plate number of the truck. The dispatcher contacted Officer Mark Weber (Weber) of the Chinook Police Department and, according to Weber's incident report, informed him that Reid had reported a "possible drunk driver" and gave him a description of the driver and vehicle. While the dispatcher's report describes the vehicle as a Chevy truck, Weber's report indicates he was told it was a Ford truck. As Weber was responding to the call, the dispatcher again contacted him to relay the additional information that the driver had left the C-Store in the truck and was westbound on Highway 2.

¶ When Weber reached the area of the C-Store, which is within the Chinook city limits, he did not see the truck. However, he could see a group of vehicles driving west on Highway 2 approximately a mile away and outside the Chinook city limits. Weber could not positively identify the blue pickup truck as being among the group of vehicles but, acting on his belief that it was, he activated the top lights on his patrol car and followed the vehicles along Highway 2.

¶ Weber caught up with the group of vehicles approximately three miles outside of Chinook, at which point he could see a blue Ford truck several vehicles ahead of him. Before he could pass enough vehicles to get directly behind it, the truck turned off the highway onto a gravel road. Weber also turned onto the gravel road and pulled up behind the truck with the lights of his patrol car flashing. The truck finally stopped about a quarter of a mile up the road. Weber had not observed any erratic driving or other indicators of alcohol impairment prior to stopping the truck. However, after talking with and observing the driver, eventually identified as Williamson, Weber arrested him for driving under the influence of alcohol (DUI) and transported him to the Blaine County Sheriff's Office.

¶ Williamson was charged in Chinook City Court with DUI, second offense, in violation of § 61-8-401, MCA. He moved to suppress all the evidence gathered subsequent to the time his truck was stopped on the basis that Weber did not have probable cause to stop him. The City Court denied the motion. Williamson subsequently pled guilty to the DUI charge, conditioned on his right to appeal the City Court's ruling on his motion to suppress, and renewed his motion in the District Court. The District Court affirmed the City Court's denial of the motion to suppress

**and Williamson appealed.**

## STANDARD OF REVIEW

¶ **We review a district court's denial of a motion to suppress to determine whether the court's findings of fact were clearly erroneous and whether those findings were correctly applied as a matter of law. State v. Fitzgerald (1997), 283 Mont. 162, 167, 940 P.2d 108, 111. The pertinent facts in this case are undisputed and, as a result, we address whether the District Court correctly applied the law in concluding that Weber had probable cause to stop Williamson.**

## DISCUSSION

¶ **Did the District Court err in concluding that Weber had probable cause to stop Williamson and in denying Williamson's motion to suppress on that basis?**

¶ **Williamson asserted that Weber needed probable cause for the stop because he was acting outside his territorial jurisdiction as a city police officer and the information within Weber's knowledge at the time of the stop did not rise to the level of probable cause. On that basis, he argued that all evidence obtained subsequent to the stop should be suppressed. In denying the motion to suppress, the District Court concluded that the relayed information and descriptions from the citizen informant, combined with Weber's observation of a blue truck matching the description given to him, provided the officer with probable cause to stop Williamson. Williamson contends that the facts within Weber's knowledge at the time he stopped Williamson did not establish the probable cause necessary to justify the stop.**

¶ **Before addressing whether the District Court erred in concluding that Weber had probable cause to stop Williamson, we take this opportunity to clarify the difference between the probable cause necessary to effectuate a valid arrest and the particularized suspicion necessary to justify an investigative stop under § 46-5-401, MCA. We also discuss the applicability of the probable cause standard--rather than particularized suspicion--in this case.**

¶ **Section 46-5-401, MCA, authorizes law enforcement officers to conduct**

**investigatory stops by providing that**

> [i]n order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. State v. Lee ( 1997), 282 Mont. 391, 394, 938 P.2d 637, 639 (citation omitted). When such a stop is challenged, the prosecution must show that there was objective data from which an experienced officer could make certain inferences resulting in a suspicion that the person is or has been engaged in wrongdoing. <u>Lee</u>, 282 Mont. at 394, 938 P.2d at 639 (citing State v. Gopher (1981), 193 Mont. 189, 193, 631 P.2d 293, 296). A particularized suspicion determination must be based on the totality of the circumstances in a given case. <u>Lee</u>, 282 Mont. at 394, 938 P.2d at 639.

**¶ While an investigatory stop may be based on only a particularized suspicion of criminal activity, an officer must have probable cause to justify a warrantless arrest.**

> A peace officer may arrest a person when a warrant has not been issued if the officer has probable cause to believe that the person is committing an offense or that the person has committed an offense and existing circumstances require immediate arrest.

Section 46-6-311(1), MCA. Probable cause to arrest is established if the facts and circumstances within an officer's personal knowledge, or related to the officer by a reliable source, are sufficient to warrant a reasonable person to believe that someone is committing or has committed an offense. Jess v. State, Dept. of Justice, MVD (1992), 255 Mont. 254, 261, 841 P.2d 1137, 1141; State v. Schoffner (1991), 248 Mont. 260, 264, 811 P.2d 548, 551. Probable cause is evaluated in light of a trained law enforcement officer's knowledge, taking into account all the relevant circumstances. City of Missoula v. Forest

(1989), 236 Mont. 129, 132, 769 P.2d 699, 701 (citation omitted). Furthermore, although not requiring evidence sufficient to prove a person's guilt, probable cause cannot be established based on an officer's mere suspicion of criminal activity. State v. Lahr (1977), 172 Mont. 32, 35, 560 P.2d 527, 529 (citations omitted). Clearly, then, the probable cause standard is more stringent than particularized suspicion. See, e.g., State v. Anderson (1993), 258 Mont. 510, 514, 853 P.2d 1245, 1248.

¶ **The issue in this case is whether Weber had sufficient justification for stopping Williamson. As stated above, ordinarily an officer needs only a particularized suspicion for such a stop. Under the circumstances of this case and for the reasons discussed below, however, Weber needed probable cause, rather than a mere particularized suspicion, to stop Williamson.**

¶ **It is undisputed that Weber was outside the Chinook city limits when he stopped Williamson and that, although § 7-32-4301(2), MCA, permits a city to authorize its police to make arrests up to 5 miles outside the city limits, the City of Chinook has never extended the jurisdiction of its police pursuant to this statute. Thus, Weber was acting outside his jurisdiction as a City of Chinook police officer when he stopped Williamson.**

¶ **It is well-established in Montana that a peace officer does not have the authority to make a warrantless arrest when acting outside his or her jurisdiction. See, e.g., State v. McDole (1987), 226 Mont. 169, 172, 734 P.2d 683, 685. This limitation on a peace officer's authority to arrest is based on Montana's statute defining a "peace officer" as**

> any person who by virtue of the person's office or public employment is vested by law with a duty to maintain public order and make arrests for offenses while acting within the scope of the person's authority.

Section 46-1-202(16), MCA. Under this statute, a peace officer's duty to maintain public order and make arrests only arises when the officer is acting within the scope of his or her authority. That scope of authority, however, is limited by the territorial jurisdictional limits of the law enforcement entity for which the officer works. Thus, a peace officer outside his or her territorial jurisdiction is outside the scope of his or her authority as a

peace officer and is not authorized to make arrests in the capacity of a peace officer.

¶ **It is equally well-established, however, that a peace officer outside his or her jurisdiction does not lose the general characteristics of a private citizen and may make an arrest under circumstances which would authorize a private citizen to do so. See State v. Hendrickson (1997), 283 Mont. 105, 108, 939 P.2d 985, 987; State v. Sunford (1990), 244 Mont. 411, 414-15, 796 P.2d 1084, 1086; McDole, 226 Mont. at 172, 734 P.2d at 685. In this regard, § 46-6-502(1), MCA, provides that a private citizen "may arrest another when there is probable cause to believe that the person is committing or has committed an offense . . . ." Consequently, a peace officer such as Weber, when acting outside his territorial jurisdiction and as a private citizen, may arrest another under the citizen's arrest statute when he has probable cause to believe that person is committing or has committed an offense; he may not act pursuant to § 46-6-311, MCA. See Hendrickson, 283 Mont. at 108, 939 P.2d at 987; McDole, 226 Mont. at 172, 734 P.2d at 685. The officer is not acting within the scope of his or her authority as a peace officer and, therefore, may not use criminal procedure statutes expressly limited in application to "peace officers." For this same reason, an out-of-jurisdiction peace officer may not use the investigatory stop statute--with its particularized suspicion, rather than probable cause, standard-- because its use is limited, by its terms, to peace officers. See § 46-5-401, MCA.**

¶ **Nor is this analysis at odds with our holding in Maney v. State (1992), 255 Mont. 270, 275, 842 P.2d 704, 707, that a person employed as a law enforcement officer is still a peace officer in fact even when making an arrest outside the officer's territorial jurisdiction under the authority of the citizen's arrest statute. There, a city police officer stopped and arrested Maney for DUI several miles outside the officer's jurisdiction. Maney was transported to the county sheriff's office where the arresting officer requested him to submit to a breathalyzer test; Maney refused the test. The city police officer then confiscated Maney's driver's license pursuant to Montana's implied consent statute. Maney, 255 Mont. at 272, 842 P.2d at 705. Maney petitioned for reinstatement of his driver's license, and the district court denied his petition. Maney, 255 Mont. at 272, 842 P.2d at 705.**

¶ **Maney argued on appeal that there was no arrest by a "peace officer" as required by § 61-8-402(1), MCA, because the arrest was made in the officer's capacity as a private citizen under § 46-6-502, MCA, and, as a result, the implied consent statute did not apply. Maney, 255 Mont. at 275, 842 P.2d at 707. We concluded that a person**

employed as a law enforcement officer is within the statutory definition of "peace officer" even when outside the geographical limits of his or her jurisdiction because "[a] person is a peace officer by virtue of holding the particular job." Maney, 255 Mont. at 275, 842 P.2d at 707. Consequently, Maney had been arrested by a peace officer as required by the implied consent statutes, even though the officer's authority for the arrest was derived from the citizen's arrest statute, and the implied consent statute applied to Maney's refusal to submit to the breathalyzer test. Maney, 255 Mont. at 275-76, 842 P.2d at 707.

¶ Our holding in Maney that a law enforcement officer is a peace officer in fact even when outside his or her territorial jurisdiction does not equate to a holding that an out-of-jurisdiction officer retains the authority to make investigatory stops on particularized suspicion pursuant to § 46-5-401, MCA, however. A law enforcement officer is always a peace officer, no matter his or her geographical location, because the officer is always a person "vested by law with a duty to maintain public order and make arrests for offenses . . . ." Section 46-1-202(16), MCA. Nevertheless, an officer may only assert his or her authority as a peace officer when "acting within the scope of [his or her] authority." Section 46-1-202(16), MCA. The distinction is between "being" a peace officer and "acting" as a peace officer; a law enforcement officer is a peace officer at all times pursuant to Maney, but may act as a peace officer only when acting within the scope of his or her authority.

¶ As a result, it is clear in this case that Weber, a peace officer acting outside his territorial jurisdiction, was limited to the authority provided to private citizens under § 46-6-502, MCA, and was required to have probable cause to stop Williamson. He could not make an investigatory stop on particularized suspicion under § 46-5-401, MCA, and have that suspicion ripen into probable cause to arrest based on evidence obtained after the stop. See, e.g., Jess, 255 Mont. at 261, 841 P.2d at 1141 (particularized suspicion for investigatory stop may ripen into probable cause to arrest through facts or incidents occurring after the stop). We turn, then, to our review of the District Court's conclusion that, considering the information within Weber's knowledge at the time he stopped Williamson, probable cause existed to make the stop.

¶ As discussed above, probable cause is established if the facts and circumstances within an officer's personal knowledge, or related to the officer by a reliable source, are sufficient to warrant a reasonable person to believe that another person is

committing or has committed an offense. <u>Jess</u>, 255 Mont. at 261, 841 P.2d at 1141; <u>Schoffner</u>, 248 Mont. at 264, 811 P.2d at 551. A probable cause determination must be based on an assessment of all relevant circumstances, evaluated in light of the knowledge of a trained law enforcement officer. <u>Forest</u>, 236 Mont. at 132, 769 P.2d at 701. Mere suspicion on the officer's part is not enough to establish probable cause to believe a person has committed an offense. <u>Lahr</u>, 172 Mont. at 35, 560 P.2d at 529.

¶ The information within Weber's knowledge at the time he stopped Williamson consisted of the citizen informant's relayed report of a "possible" drunk driver in an early 1960s model blue Ford pickup truck and his observation of a truck matching that description. Williamson argues that this information was not sufficient to establish probable cause because Reid's report of a possible drunk driver did not include enough detail to provide a basis for her opinion that the driver might be intoxicated and Weber failed to adequately corroborate Reid's information before initiating the stop.

¶ Generally, a law enforcement officer may rely on the report of a citizen informant in determining that there is probable cause to believe an offense has been committed. See, e.g., <u>Schoffner</u>, 248 Mont. at 264-65, 811 P.2d at 551-52; <u>Jess</u>, 255 Mont. at 261, 841 P.2d at 1141; Santee v. State, Dept. of Justice, Motor Vehicle Div. (1994), 267 Mont. 304, 308, 883 P.2d 829, 832; State v. Hammer (1988), 233 Mont. 101, 107, 759 P.2d 979, 983; State v. Ribera (1979), 183 Mont. 1, 6-7, 597 P.2d 1164, 1168. The citizen's report is not necessarily sufficient to establish probable cause, however, and a review of our cases addressing citizen informant reports in relation to probable cause determinations reveals that there must be some indication of the reliability of-- and the basis for--the citizen's report.

¶ In <u>Schoffner</u>, for example, three citizens witnessed a man break into, enter and rummage around in a laundromat. One witness called the police and gave the dispatcher an ongoing account of the man's actions as they occurred, as well as a description of the man. The dispatcher relayed the information to a police officer. <u>Schoffner</u>, 248 Mont. at 263, 811 P.2d at 551. The officer apprehended the defendant, who matched the description of the suspect, shortly thereafter a block away from the scene of the crime and the three eyewitnesses positively identified him at the scene as the man they saw burglarize the laundromat. <u>Schoffner</u>, 248 Mont. at 263-64, 811 P.2d at 551. The basis for and reliability of the citizen informants' report was established by the detailed account of the offense as it was happening and the

citizens' identification of the defendant in the presence of law enforcement personnel. We concluded, under those facts and circumstances, that the officer had probable cause to arrest the defendant. Schoffner, 248 Mont. at 265, 811 P.2d at 552.

¶ In Santee, three separate witnesses informed a police officer that they had seen a highly intoxicated man they believed was about to drive his vehicle. Each witness spoke personally with the officer and either identified the defendant as the intoxicated person or identified the vehicle he was driving. Santee, 267 Mont. at 306, 883 P.2d at 830-31. We held that the officer had probable cause to arrest the defendant based on the three witness reports, each of which corroborated the others, the witnesses' identification of the defendant in the officer's presence and the officer's observation of the defendant driving his vehicle. Santee, 267 Mont. at 308-09, 883 P.2d at 832. In Hammer, we also held that probable cause existed based, in part, on the report of a citizen informant. There, the informant was the victim of the crime. He spoke personally with officers at the scene of the crime, described in detail the events which had occurred prior to the officers' arrival and identified the defendant as his assailant in the presence of the officers. Hammer, 233 Mont. at 104-05, 759 P.2d at 982-83.

¶ Similarly, in Jess, we concluded there was probable cause to arrest the defendant where a citizen informant reported that she had observed a person in a pickup truck driving erratically, described the erratic nature of the driving, described the vehicle and gave the license plate number, and identified the defendant as the driver. Jess, 255 Mont. at 256, 841 P.2d at 1138. Furthermore, prior to the defendant's arrest, the arresting officer also observed the defendant, saw indications that he was intoxicated and spoke personally with the citizen informant to confirm the information the informant had provided earlier. Jess, 255 Mont. at 261, 841 P.2d at 1141.

¶ Finally, in Ribera, we held that a citizen informant's tip was not sufficient to establish probable cause to arrest the defendant where the citizen's information was based on observations made by a third party rather than on his personal knowledge. We concluded that, where a citizen informant's report is based on another person's statements, law enforcement officers are required to make further inquiry as to the underlying facts and circumstances on which the report is based in order to reduce the possibility of a mistake and to satisfy the minimum standards for establishing probable cause. Ribera, 183 Mont. at 7, 597 P.2d at 1168.

¶ Thus, a citizen informant's report is not sufficient to establish probable cause unless there is information indicating the underlying circumstances and the basis of the citizen's knowledge that an offense has been or is being committed. Reviewing citizen informant Reid's report in this case, as it was relayed to Weber, we conclude that Reid's information did not contain sufficient information, in and of itself, to establish probable cause that an offense was being committed. First, Reid's relayed report was merely that there was a possible drunk driver near the C-Store, together with descriptions of the driver and his vehicle. It contained no details of the basis for her conclusion that the driver possibly was intoxicated. Consequently, this case is factually distinguishable from cases such as Schoffner, where one of the informants gave the dispatcher a "blow by blow" account of the suspect's actions as they occurred; Hammer, where the citizen informant was the victim and described in detail the events of the assault; and Jess, where the citizen informant particularly described the erratic nature of the defendant's driving she had observed. See Schoffner, 248 Mont. at 263, 811 P.2d at 551; Hammer, 233 Mont. at 104-05, 759 P.2d at 982-83; Jess, 255 Mont. at 256, 841 P.2d at 1138.

¶ Second, unlike the facts in Santee, 267 Mont. at 308, 883 P.2d at 830-31, Hammer, 233 Mont. at 104-05, 759 P.2d at 982-83, and Jess, 255 Mont. at 261, 841 P.2d at 1138, Weber did not speak with Reid, either personally or through the dispatcher, to discover the facts underlying her report or otherwise determine the basis for her knowledge and opinion regarding intoxication. In some instances, such as the citizen report in Schoffner which described the details of the offense as it occurred, a citizen informant's report may contain enough detail to be essentially self-authenticating. However, where a citizen informant's report is lacking such detail, it is incumbent on law enforcement to probe into the basis for and veracity of the report before relying on the report to determine that probable cause exists. Indeed, in the present case, the record does not indicate whether Reid's report was based on her personal knowledge and observation of the alleged drunk driver or on information obtained from a third party and relayed by Reid to the dispatcher. In such circumstances, it is even more imperative that law enforcement officers inquire further into the basis for the report in order to avoid the possibility of a mistake and to satisfy at least the minimum requirements of probable cause. See Ribera, 183 Mont. at 7, 597 P.2d at 1168.

¶ The State of Montana (State) asserts that Schoffner is factually similar to the present case and supports a conclusion that Reid's relayed report was sufficient to establish probable cause to stop Williamson. As discussed above, however, Schoffner

is readily distinguishable in that there, one of the citizen informants gave law enforcement a detailed description of the defendant's actions constituting the offense as they occurred. Moreover, all three witnesses in that case spoke personally with law enforcement officers and identified the defendant at the scene of the offense. Schoffner, 248 Mont. at 263-64, 811 P.2d at 551. Here, Reid's relayed report is devoid of any information as to why she believed the man at the C-Store was intoxicated and Weber did not inquire into the basis for Reid's report before he stopped Williamson's truck.

¶ We conclude that Reid's relayed report of the possible drunk driver was insufficient, in and of itself, to establish probable cause justifying Weber's stop of Williamson's truck. A probable cause determination must be based on all the facts and circumstances within the officer's knowledge, however. Jess, 255 Mont. at 261, 841 P.2d at 1141; Schoffner, 248 Mont. at 264, 811 P.2d at 551. Thus, we examine whether Weber had knowledge of any other facts or circumstances which, when combined with Reid's relayed report, would have established probable cause to believe that Williamson was committing an offense.

¶ Upon receiving Reid's report of a possible drunk driver via the dispatcher, Weber proceeded to the C-Store where he observed a group of vehicles about a mile away traveling west on Highway 2. Weber followed these vehicles and, when he caught up to them, he observed a blue Ford truck in the middle of the group which he believed to be the truck described by the dispatcher. Although Weber followed the truck for several miles before stopping it, he did not observe any erratic driving or other indications that the driver may have been under the influence of alcohol. Therefore, the only information Weber had in addition to Reid's report was his observation of a pickup truck matching the description he had been given driving down the highway in the direction indicated by the dispatcher. The District Court concluded that this limited corroboration of Reid's report was sufficient to provide Weber with probable cause to stop Williamson. We cannot agree.

¶ The information provided by Reid created, at most, a suspicion that an offense was being committed. Weber's subsequent observation of Williamson's truck provided no information which would raise this mere suspicion to a belief that an offense was being committed; the truck did not swerve, speed or otherwise indicate that the driver was impaired. Thus, when he stopped the truck, Weber still had nothing more than a suspicion that the driver was under the influence of alcohol. Such a suspicion

is not enough to establish probable cause that an offense is being committed. Lahr, 172 Mont. at 35, 560 P.2d at 529.

¶ Finally, the State asserts that the information within Reid's knowledge established that she herself had probable cause to arrest Williamson under § 46-6-502(1), MCA. It further asserts that, pursuant to McDole, an out-of-jurisdiction officer may make an arrest "if a private citizen could have made a lawful arrest under the circumstances." Thus, according to the State, because Reid could have made the citizen's arrest, Weber automatically had the same authority to act. We disagree.

¶ The probable cause Weber needed to stop Williamson is determined based on the facts and circumstances within his knowledge at the time he made the stop. See Jess, 255 Mont. at 261, 841 P.2d at 1141; Schoffner, 248 Mont. at 264, 811 P.2d at 551. Regardless of whether Reid had sufficient information to establish probable cause to arrest Williamson herself, our discussion above reflects that she did not provide that information to the dispatcher and, ultimately, Weber. As a result, Weber did not have sufficient information within *his* knowledge to establish probable cause to stop Williamson.

¶ We conclude that, considering all the facts and circumstances within his knowledge at the time, Weber did not have probable cause to stop Williamson. As a result, we further conclude that the evidence obtained by him subsequent to the stop must be suppressed. We hold, therefore, that the District Court erred in concluding that Weber had probable cause to stop Williamson and in denying Williamson's motion to suppress on that basis.

¶ Reversed.

/S/ KARLA M. GRAY

We concur:

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

Chief Justice J. A. Turnage, dissenting.

¶38 I respectfully dissent.

¶39 As found by the District Court, based on documents and facts stipulated by parties, on June 20, 1995, Chinook Police Officer Mark Weber received a call from the Blaine County Sheriff's Office dispatcher. Officer Weber was told by the dispatcher that a certain named citizen had reported a drunk driver--older male, very drunk, driving an old pickup blue in color with license 12T-249G. He was further informed by the dispatcher that the driver had just left the C-Store westbound on Highway #2. Officer Weber thereafter observed a group of vehicles westbound on Highway #2. He, believing that the vehicle bearing license number 12T-249G was in a group of westbound vehicles, activated the top lights and accelerated to catch the vehicles. He caught up with the west bound vehicles on Highway #2 and observed within this group an old blue pickup with license 12T-249G.

¶40 Officer Weber followed the vehicle off Highway #2 onto a gravel road and subsequently stopped the vehicle, resulting in the arrest of Williamson and his being charged with the offense of driving under the influence of alcohol.

¶41 The findings of the District Court in part state:

> In this case, at the time of the stop of Defendant, Officer Weber was armed with knowledge of a private citizen's report given at 12:50 P.M. of a

"drunk . . . very drunk" driver in an older model blue pickup having license number 12T-249G seen initially within the Chinook city limits and now heading west out of Chinook on Highway #2. This information was corroborated with Weber's personal observation nine minutes later (at 12:59 P. M.) of an older model blue pickup with this same license number traveling west on Highway #2 within a few miles of the city limits. In his observations, Weber was able to confirm significant parts of this private citizen's report, i.e., general vehicle description, license number, direction of travel, location of travel and close proximity in time to initial observation by private citizen.

. . . .

It is this private citizen's information together with the corroborating personal observations of Weber that provide probable cause for the stop and subsequent arrest of Defendant.

. . . .

As stated, Officer Weber did make corroborating personal observations of presumptively reliable private citizen-based information. With this corroborating observation, it makes little sense that Officer Weber should have waited to observe additional corroborating information, such as erratic driving behavior or intoxication by Defendant, prior to stopping Defendant. To do so would have defeated the very purpose of Montana's criminal statutes pertaining to drinking and driving.

As stated in McDole, Montana's criminal traffic statutes are intended to limit injury to persons or property. "If the police officer had not arrested (the

defendant), it is quite possible that he might have commenced driving again in his intoxicated condition and critically injured himself or others." <u>McDole</u>, 734 P.2d at 686. Likewise, if Officer Weber would have waited to personally observe erratic driving or intoxication, it is equally possible that Defendant would have subjected himself or others to critical injury.

Officer's [sic] Weber's stop in this case is consistent with the policy of this State to remove suspected drunk drivers from the roads as soon as possible. In conclusion, an officer outside of his jurisdiction can find probable cause to make a stop and arrest based upon information obtained from a private citizen informant and observations of the officer tending to confirm the reliability of the information. In the case such as this proceeding where the information alleges "drunk" driving, personal observation of the suspect's driving or intoxicated condition may constitute corroboration but such observation is not required where other independent observation tends to confirm the reliability of the citizen-provided information. Under these circumstances, the inherent risk of critical injury to persons or property by allowing the suspected drunk driver to continue to stay on the roads supports an immediate stop and arrest.

I agree with the findings of the District Court.

¶42 The report of the private citizen is not only presumptively reliable, but the citizen was an accurate observer of the condition of Williamson, whose subsequent blood alcohol test after his arrest showed .225. This is 125 percent more than the minimum amount sufficient to establish presumptive driving while intoxicated. The citizen informant was not only presumptively reliable, but also an accurate observer of an intoxicated person.

¶43 The majority opinion states: "Probable cause to arrest is established if the facts and circumstances within an officer's personal knowledge, or related to the officer by a reliable source, are sufficient to warrant a reasonable person to believe that someone is committing or has committed an offense." Based on this standard, Officer Weber unquestionably had probable cause to arrest Williamson. Most certainly, the citizen informant's information was sufficient to establish underlying circumstances and the basis of the citizen's

knowledge that an offense was being committed. The citizen personally observed the intoxicated condition of Williamson, his entry into the blue pickup truck, the truck's license number and Williamson's driving it away.

¶44 The majority opinion would require Officer Weber to abandon the pursuit and arrest of a drunk driver in order to make inquiries in and about Chinook to avoid the possibility of a mistake. There was no mistake made in this case by Officer Weber. The majority opinion that Officer Weber had nothing more than a suspicion that the driver was under the influence of alcohol is simply not correct.

¶45 I would affirm.

/S/ J. A. TURNAGE