No. 98-166

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 148N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JOSEPH MICHAEL KILLEAGLE,

Defendant and Appellant.

APPEAL FROM: District Court of the Seventeenth Judicial District,

In and for the County of Phillips,

The Honorable John C. McKeon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James W. Spangelo, Attorney at Law, Havre, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; John Paulson,

Assistant Attorney General, Helena, Montana

Ed Amestoy, Phillips County Attorney; Dan O'Brien, Deputy

Phillips County Attorney, Malta, Montana

_____

Submitted on Briefs: January 6, 2000

Decided: June 6, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Joseph Michael KillEagle (KillEagle), having pled guilty to certain criminal offenses and reserved the right to appeal certain underlying matters, appeals from the ruling of the Seventeenth Judicial District Court, Phillips County, denying his motions to suppress and dismiss. We affirm.

¶3 We address the following restated issues on appeal:

¶4 1. Did the District Court err in denying KillEagle's motion to suppress, which was based on his claim that the officer lacked a particularized suspicion to justify the investigative stop of his vehicle?

¶5 2. Did a particularized suspicion exist for conducting a horizontal gaze nystagmus (HGN) test during the investigative stop?

¶6 3. Did the District Court err in determining that KillEagle's motion to suppress the

HGN test results for lack of foundation was premature?

¶7 4. Did the officer have probable cause to arrest KillEagle for driving under the influence of alcohol (DUI)?

¶8 5. Did the District Court err in denying KillEagle's motion to dismiss the charges against him for lack of evidence?

## BACKGROUND

¶9 KillEagle originally was charged in the Justice Court of Phillips County with several offenses. The charges, which arose from a stop of KillEagle's vehicle by Montana Highway Patrol Officer Ralph Atchley (Atchley) some miles outside of Malta, Montana, later were amended. KillEagle moved to suppress the evidence resulting from the vehicle stop and dismiss the charges. After denying KillEagle's motions, the Justice Court convicted him of the offense of operation of a motor vehicle by a person with an alcohol concentration of 0.10 or more and driving while his license was suspended or revoked. KillEagle appealed to the District Court for a trial *de novo*.

¶10 KillEagle renewed his motions to suppress and dismiss in the District Court and a hearing was held. Atchley, Phillips County Deputy Sheriff Shawn VanVleet, Les KillEagle--KillEagle's father--and KillEagle all testified. At the close of the hearing, the District Court made oral findings and conclusions which expressly took into account "some confusion over the location of the particular offenses." The court concluded that particularized suspicion existed for the investigative stop, that probable cause existed thereafter for the issuance of citations, that the results of the HGN test conducted by Atchley were not so inherently unreliable as to be inadmissible as a matter of law, and that KillEagle's argument relating to the necessity of expert testimony to lay the foundation for admissibility of the HGN test results was premature because the State of Montana (State) had indicated it would call expert witnesses at trial. The effect of the District Court's findings and conclusions was to deny KillEagle's motions to suppress and dismiss.

¶11 KillEagle subsequently entered guilty pleas to the charges against him, reserving the right to appeal from the ruling on his motions. The District Court sentenced him and entered judgment. KillEagle appeals.

## STANDARD OF REVIEW

¶12 "We review a district court's denial of a motion to suppress to determine whether its findings are clearly erroneous and whether those findings were correctly applied as a matter of law." *State v. Lafferty*, 1998 MT 247, ¶ 10, 291 Mont. 157, ¶ 10, 967 P.2d 363, ¶ 10 (citation omitted).

## DISCUSSION

¶13 1. Did the District Court err in denying KillEagle's motion to suppress, which was based on his claim that Atchley lacked a particularized suspicion sufficient to justify the investigative stop?

¶14 "[A] peace officer may stop any . . . vehicle that is observed in circumstances that create a particularized suspicion that the . . . occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401, MCA. To prove the existence of a particularized suspicion sufficient to stop a vehicle, the State bears the burden of showing objective data from which an experienced peace officer can make certain inferences and a resulting suspicion that the vehicle's occupant is engaged in wrongdoing. *Lafferty*, ¶ 9 (citation omitted). The existence of a particularized suspicion sufficient to justify an investigative stop is a "question of fact which depends on the totality of the circumstances." *Lafferty*, ¶ 10 (citation omitted).

¶15 Atchley testified at the suppression hearing that he followed KillEagle's vehicle in a westbound direction on Highway 2 for a number of miles and observed that it

> was demonstrating some erratic driving behavior. It would drift off to the right side of the pavement, jerk back to the center line, drift towards the center line and then jerk back towards the center of the driving lane. Did that several times back and forth.
>
> . . . .
>
> If I recall, the actual tires didn't cross the center line, but the body of the car, the fenders did when it moved back to the right. . . .
>
> . . . .
>
> . . . . As [the vehicle] approached the bridge he was drifting off to the right side of

the traffic lane at that point, and at that point I thought he was going to strike the guardrail to the bridge. He jerked back over to the center of the traffic lane and crossed the bridge and drifted off to the center of the highway and then came back to the center of his traffic lane.

Atchley further testified that he stopped KillEagle's vehicle because "[b]ased on his erratic driving behavior I felt he was unsafe on the road at that point. I just wanted to make sure he, the driver, was -- was in a condition to continue down the road in a safe manner." At the time of the stop, he believed--based on his observations, experience and DUI detection training--that KillEagle's driving ability was impaired in some manner. The District Court, in reviewing the totality of the circumstances, found that

> there were specific observations of erratic driving behavior, observations made by a trained and experienced patrol officer. Those observations together with [the officer's] training and experience lead [sic] the officer to believe that there was a possibility of impaired driving. I find that they create circumstances under which there is a particularized suspicion that the defendant, as the occupant of the vehicle, had committed, was committing or was about to commit an offense. That under those circumstances there is sufficient reason to make an investigatory stop, and that this stop was a valid stop.

¶16 KillEagle challenges the District Court's particularized suspicion finding on two bases: 1) all of Atchley's testimony should be disregarded because his testimony about the precise location of the events at issue is "incredible and unbelievable" and, as a result, there is no substantial evidence that erratic driving occurred; and 2) even accepting Atchley's testimony about KillEagle's erratic driving, that driving is insufficient to justify the investigative stop. Neither argument has merit.

¶17 It is true that Atchley's testimony was somewhat confused and inconsistent with regard to the exact location--by mile markers--at which the erratic driving and investigative stop occurred. The District Court addressed that confusion, however, noting that while the location was attacked, "[i]t was not the observation of erratic driving behavior that was primarily attacked." The court accepted Atchley's testimony about KillEagle's erratic driving.

¶18 Where, as here, a district court is the finder of fact, it is within that court's province to determine witness credibility and the weight to be given evidence. We do not substitute

our judgment for that of the factfinder on such matters. *See Seyferth v. State, Dept. of Justice* (1996), 277 Mont. 377, 385, 922 P.2d 494, 499 (citation omitted). Therefore, we reject KillEagle's contention that this Court should--or can--determine that, because part of Atchley's testimony was confused and inconsistent, all of his testimony is inherently unbelievable and unreliable.

¶19 Nor is KillEagle's second contention, that his erratic driving was insufficient to establish a particularized suspicion under the totality of the circumstances in this case, of merit. In this regard, his first argument is that where "there is no criminal violation, there can be no particularized suspicion[.]" However, the plain language of § 46-5-401, MCA, controverts this argument by stating that only a particularized suspicion that an "occupant of [a] vehicle has committed, is committing, or is about to commit an offense" is necessary to justify an investigative stop.

¶20 Moreover, while KillEagle suggests *Lafferty* requires the commission of an offense before particularized suspicion can arise, nothing in *Lafferty* supports his characterization. One of the issues in *Lafferty* was whether certain driving was "illegal"--that is, whether it constituted a traffic violation--under § 61-8-328, MCA. We held that the traffic statute relied on by the prosecution had not been violated. *Lafferty*, ¶¶ 13-14. We did not hold that a traffic violation was required to establish particularized suspicion.

¶21 KillEagle also argues that, even accepting Atchley's description of his driving behavior, it did not constitute "erratic driving" as set forth in *Lafferty* and, as a result, it was insufficient to form the basis for a particularized suspicion to justify the investigative stop. In *Lafferty*, the driving at issue was "relatively minor crossings of the fog line" and we determined it did not constitute erratic driving or driving all over the road or crossing the center line and the fog line. *Lafferty*, ¶ 16. Here, Atchley testified that KillEagle was driving erratically, that his vehicle repeatedly drifted first to the right side of the pavement, followed by jerking back to the center of the lane, and then toward the center line, followed by jerking back to the center of the driving lane. Atchley also testified that the fenders of KillEagle's vehicle crossed the center line. According to Atchley, KillEagle's vehicle also drifted to the right at one point to an extent he thought the vehicle was going to strike the guardrail on the bridge. This repeated drift-and-jerk driving behavior is more erratic than the relatively minor crossings of the fog line in *Lafferty*.

¶22 We conclude, on this record, that the District Court's finding--under of the totality of the circumstances--of a particularized suspicion that KillEagle's driving was impaired is

supported by substantial evidence and is not otherwise clearly erroneous. As a result, we hold the court did not err in denying KillEagle's motion to suppress which was based on the lack of a particularized suspicion sufficient to justify the investigative stop.

¶23 2. Did a particularized suspicion exist to conduct the HGN test during the investigative stop?

¶24 KillEagle contends that, even if a particularized suspicion existed for the investigative stop, *Hulse v. State, Dept. of Justice*, 1998 MT 108, 289 Mont. 1, 961 P.2d 75, requires a particularized suspicion for administration of the HGN test. He argues that such a particularized suspicion did not exist in this case and, as a result, the results of the HGN test must be suppressed.

¶25 We observe that *Hulse* had not been decided at the time of the District Court's ruling on KillEagle's motion to suppress. KillEagle did raise an issue closely related to that now presented, however, and, as a result, we will address this issue briefly.

¶26 The overarching issue in *Hulse* was whether field sobriety tests were warrantless searches requiring both probable cause and exigent circumstances under the Montana Constitution. *Hulse*, ¶ 19. We held that such tests were searches, but that they need be based only on particularized suspicion, rather than probable cause. *Hulse*, ¶ 38. We went on to indicate that the particularized suspicion necessary for the initial stop may serve as the particularized suspicion for field sobriety tests if the basis for the initial stop was of a nature that would lead an officer to believe the driver was intoxicated. We further indicated that, if the stop was made for a reason unrelated to intoxication or impaired driving and no signs of intoxication were observed during the initial stop, no particularized suspicion of driving under the influence would exist and no field sobriety tests could be administered. *Hulse*, ¶¶ 39-40.

¶27 Here, the District Court found that a particularized suspicion existed for Atchley to believe that KillEagle's driving was impaired and we concluded above that the court did not err in that regard. Under *Hulse*, the particularized suspicion necessary for the initial stop in this case served as the particularized suspicion required for the HGN test. Moreover, even if more were required to establish a particularized suspicion for the test, such a requirement was met in this case by Atchley's testimony that KillEagle's eyes were bloodshot, his speech was slurred and the smell of an alcohol-based substance was coming from the vehicle.

¶28 We hold that a particularized suspicion existed to conduct the HGN test during the investigative stop.

¶29 3. Did the District Court err in determining that KillEagle's motion to suppress the HGN test results for lack of foundation was premature?

¶30 KillEagle's motion to suppress contended that expert testimony was required to lay the foundation for admission of HGN evidence at trial, that the expert should be a doctor in an optical field and that, because the State had not identified such an expert witness, it would not be able to meet its foundational burden. Accordingly, use of the HGN test results should not be allowed. The District Court observed that the State had indicated it would be calling expert witnesses and, as a result, KillEagle's motion was premature and "may be an issue for consideration during the course of trial."

¶31 KillEagle shifts his argument on appeal from that presented in the District Court by arguing that Atchley's HGN-related testimony at the suppression hearing was inadmissible for lack of expert witness foundation. We observe that he did not object to Atchley's testimony on that subject during the suppression hearing and did not object, at the time of the District Court's ruling that the issue was premature, on the basis that his foundation issue was directed to the suppression hearing stage.

¶32 Under § 46-20-104(2), MCA, failure to make a timely objection constitutes a waiver of the objection except as provided in § 46-20-701(2), MCA, which is inapplicable here. Moreover, we will not put a district court in error when it was not given an opportunity to correct itself. *State v. Weeks* (1995), 270 Mont. 63, 85, 891 P.2d 477, 490 (citation omitted). Finally, we do not address a party's change in legal theory on appeal. *See Day v. Payne* (1996), 280 Mont. 273, 276, 929 P.2d 864, 866 (citations omitted).

¶33 KillEagle did not object to Atchley's testimony, did not advise the District Court he intended his HGN test foundation issue to apply to the suppression hearing, and has changed his legal theory from that presented in the District Court. Nor does he address the court's actual determination that the foundation issue was premature. We conclude, therefore, that the District Court did not err in determining that KillEagle's motion to suppress the HGN test results for lack of foundation was premature.

¶34. Did Atchley have probable cause to arrest KillEagle for DUI?

¶35 KillEagle's argument that probable cause did not exist for his arrest is premised primarily on his arguments, addressed and rejected above, that Atchley's testimony was inherently unreliable and the HGN test results should have been inadmissible at the suppression hearing. Therefore, this issue needs little additional discussion.

¶36 To justify a warrantless arrest, an officer must have probable cause to believe that a person is committing an offense and existing circumstances require immediate arrest. Section 46-6-311(1), MCA. The requisite probable cause is "established if the facts and circumstances within an officer's personal knowledge . . . are sufficient to warrant a reasonable person to believe that someone is committing . . . an offense." It is evaluated in the light of a trained law enforcement officer's knowledge, taking into account all of the relevant circumstances. *State v. Williamson,* 1998 MT 199, ¶ 12, 290 Mont. 321, ¶ 12, 965 P.2d 231, ¶ 12.

¶37 Here, Atchley, an experienced officer with substantial training in DUI detection, personally observed KillEagle's erratic driving over a several-mile distance; noticed slurred speech, bloodshot eyes and the odor of an alcohol-based substance after stopping the vehicle; and conducted an HGN test on which KillEagle scored six points. On this record, we conclude that Atchley had probable cause to arrest KillEagle for DUI.

¶38 5. Did the District Court err in denying KillEagle's motion to dismiss the charges against him for lack of evidence?

¶39 Under this issue, KillEagle essentially repeats his above arguments that Atchley's testimony was inherently unreliable, that his driving was not erratic and that the HGN test results should have been suppressed. He contends that, once his arguments have been accepted, there is little or no evidence--and certainly not sufficient evidence--upon which the DUI charge could stand and, as a result, the District Court should have granted his motion to dismiss for lack of evidence.

¶40 We rejected above each of the underlying arguments on which this issue is premised. On this record, there was sufficient evidence to proceed and, accordingly, we hold that the District Court properly denied KillEagle's motion to dismiss for lack of evidence.

¶41 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ WILLIAM E. HUNT, SR.