CHIEF JUSTICE GRAY,
dissenting.
¶24 I respectfully dissent from the Court’s opinion which, in my view, turns “particularized suspicion” on its head by requiring law enforcement officers to know, both in fact and under the law, that an offense has been committed prior to making an investigative stop. I cannot agree, and I would affirm the District Court.
¶25 Notwithstanding that the ultimate issue in the District Court was whether Officer Leasure had particularized suspicion or reasonable grounds to believe Kleinsasser had been driving or was in physical control of a vehicle upon a public way while under the influence of alcohol, the dispositive question in both that court and on appeal is whether Officer Leasure had a particularized suspicion to make an investigatory stop of Kleinsasser’s vehicle in the first instance. The trial court found that he did and that, having properly returned to the vehicle, subsequent events properly gave rise to Kleinsasser’s arrest for DUI and the State’s revocation of his driver’s license. Under the *332 applicable statute and our case law, it is my view that the District Court was correct.
¶26 I join the Court in focusing first on the portion of § 46-5-401, MCA, which authorizes an officer to stop a person or vehicle observed in circumstances creating a particularized suspicion that the person or occupant of the vehicle has committed or is committing an offense. I also join in the Court’s statement of our two-part test for particularized suspicion, which requires the State to show objective data from which an experienced officer can make certain inferences and a resulting suspicion that the occupant of a vehicle is or has been engaged in wrongdoing. See Gopher, 193 Mont. at 194, 631 P.2d at 296. Moreover, it is important to recognize that the particularized suspicion necessary for an investigative stop is a less stringent standard to meet than the probable cause standard (see State v. Williamson, 1998 MT 199, ¶ 12, 290 Mont. 321, ¶ 12, 965 P.2d 231, ¶ 12 (citation omitted)). In turn, of course, probable cause is a lesser standard than the State’s beyond a reasonable doubt burden in proving that a criminal offense was committed. Unfortunately, the Court fails to properly apply these principles in the present case.
¶27 Instead, the Court begins by suggesting, but not concluding, that the officers lacked sufficient objective data from which to conclude that the person they observed on the side of the road was an occupant of Kleinsasser’s vehicle. To the extent this section of the Court’s opinion is intended to buttress the Court’s later discussion and conclusions, I submit it is incorrect.
¶28 First, it is undisputed that the person the officers observed was urinating behind or beside the door of Kleinsasser’s vehicle. Second, there is no suggestion that other persons were in the vicinity on foot at approximately 9:30 in the evening; nor does the record reflect the existence of another parked vehicle nearby from which the person at issue could have exited and re-entered after urinating beside Kleinsasser’s vehicle. Third, the time lapse between the officers’ observations and their return to the vehicle was minimal. The fact that the person was no longer outside the vehicle in the location where the urinating occurred does not negate the objective data that a man was observed urinating immediately next to the Kleinsasser vehicle, especially in fight of the fact that there were three males in the vehicle upon the officers’ arrival there. Finally, in this regard, the Court’s reliance on the fact that the officers were unable to identify one of the occupants of the vehicle as the urinater, after the “stop” occurred and because the occupants simply denied having committed that act, is *333 totally improper. The question is whether objective data existed prior to the stop upon which the officers reasonably relied in making contact with the occupants of the vehicle. Under the circumstances here, it clearly did.
¶29 More important, however, and far more dangerous for the future of law enforcement’s ability to protect Montanans, is the Court’s implicit adoption of Kleinsasser’s argument that the “facts” must “demonstrate” that the observed behavior was a violation of the law before an investigative stop can be justified. The question of whether an offense occurred is not for this Court or the District Court to resolve in the context of a proceeding over a driver’s license suspension. If an offense is charged, that question is for the finder of fact.
¶30 The question before us here is whether urinating beside a road or in any other, public place can constitute the criminal offense of disorderly conduct. The Court determines that it can, and I agree. Having so concluded, it is my opinion that the particularized suspicion issue is largely resolved. Based on their personal observations and the inferences properly drawn therefrom, the officers had a particularized suspicion that an occupant of Kleinsasser’s vehicle had committed the offense of disorderly conduct. Nothing more was required to make the stop of the vehicle.
¶31 Particularized suspicion does not turn on whether a charge is subsequently filed or on whether the State could prove beyond a reasonable doubt in a criminal trial that, given the time, place and circumstances, the offense had been committed. In that regard, the Court’s reliance on the comments of the Criminal Law Commission to the statute defining the offense of disorderly conduct have no relevance here; those comments go to matters concerning charging and proving the offense. Thus, the questions on which the Court focuses-whether an occupant of the Kleinsasser vehicle actually created a physically offensive condition that served no legitimate purpose-have no place in our consideration of the present case.
¶32 We all agree that urinating in a public place can constitute the criminal offense of disorderly conduct. Because the officers observed such conduct in this case, I would conclude that the District Court properly determined the officers had a particularized suspicion to stop the Kleinsasser vehicle on the basis that an occupant had committed a criminal offense. While it is easy to be amused over the “to pee or not to pee” language used by the Court and, as a result, to underestimate the consequences of the Court’s decision here, I am greatly concerned about where the Court’s holding in this case will lead us, that is, what *334 effect it will have on law enforcement’s ability to make investigatory stops in future cases involving particularized suspicion that other offenses are being or have been committed. If a law enforcement officer must be able to prove that an offense has been committed before making an investigative stop, the applicable statute has been judicially repealed and Gopher has been effectively overruled. I simply cannot agree.
¶33 I dissent.